RECEIVED
02/26/2024
KELLY L. STEPHENS, Clerk

No. 24-_____

In the

# United States Court of Appeals

## For the Sixth Circuit

───────────────

AARON HALL, KATHERINE GLOD, and JEFFREY BINDER, on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents*,

v.

TRIVEST PARTNERS L.P. and TGIF POWER HOME INVESTOR, LLC,

*Defendants-Petitioners*,

and

WILLIAM JAYSON WALLER,

*Defendant.*

───────────────────────────────

From the United States District Court for the Eastern District of Michigan
Case No. 4:22-cv-12743
(The Honorable F. Kay Behm)

───────────────────────────────

**PETITION FOR PERMISSION TO APPEAL
UNDER 28 U.S.C. § 1292(b)**

───────────────────────────────

Brian D. Schmalzbach
R. Trent Taylor
Frank Talbott V
**McGuireWoods LLP**
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746

*Counsel for Defendants-Petitioners*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:  24-_____     Case Name: Aaron Hall, et al. v. Trivest Partners L.P., et al.

Name of counsel:  Brian D. Schmalzbach_____

Pursuant to 6th Cir. R. 26.1, Trivest Partners L.P._____
_____
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

Yes. American International Group Inc. (insurer) and CNA Financial Corp. (insurer) have a
financial interest in the outcome of this appeal.

CERTIFICATE OF SERVICE

I certify that on _____February 26, 2024_____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Schmalzbach_____
_____
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-_____    Case Name: Aaron Hall, et al. v. Trivest Partners L.P., et al.

Name of counsel:  Brian D. Schmalzbach

Pursuant to 6th Cir. R. 26.1, TGIF Power Home Investor, LLC
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

Yes. American International Group Inc. (insurer) and CNA Financial Corp. (insurer) have a financial interest in the outcome of this appeal.

### CERTIFICATE OF SERVICE

I certify that on _____ February 26, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Schmalzbach

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

ii

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

QUESTION PRESENTED .................................................................3

BACKGROUND ................................................................................3

STANDARD FOR GRANTING PERMISSION TO APPEAL.........................6

REASONS FOR GRANTING THE PETITION ..................................6

    I.    The availability of RICO jurisdiction outside a district where all defendants are subject to jurisdiction is a controlling question of law. ............................................................7

    II.    There is undisputed substantial ground for difference of opinion. .........................................................................8

    III.    An immediate appeal would materially advance the termination of the litigation. .............................................10

    IV.    The question presented is important, cleanly presented, and wrongly decided below. .............................................12

CONCLUSION ................................................................................15

CERTIFICATE OF COMPLIANCE .................................................16

CERTIFICATE OF SERVICE ..........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthony v. Over*,
    2023 WL 6307960 (E.D. Tenn. Sept. 27, 2023) .............................................10

*Bachi-Reffitt v. Reffitt*,
    802 F. App'x 913 (6th Cir. 2020) ........................................................................4

*In re Baker & Getty Fin. Servs., Inc.*,
    954 F.2d 1169 (6th Cir. 1992) .............................................................................7

*Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ..........................................................1, 5, 9, 10, 14

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) ...................................................................1, 5, 9

*Doe v. Varsity Brands, LLC*,
    2023 WL 4935933 (N.D. Ohio Aug. 2, 2023) ..................................................10

*Donatelli v. Nat'l Hockey League*,
    893 F.2d 459 (1st Cir. 1990) .............................................................................12

*Enginetec Corp. v. Boutin*,
    2008 WL 11380215 (N.D. Ohio Dec. 5, 2008) ................................................10

*ESAB Grp., Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) .............................................................................12

*High Adventure Ministries, Inc. v. Tayloe*,
    309 F. Supp. 3d 461 (W.D. Ky. 2018) .............................................................10

*Hutson v. Fehr Bros.*,
    584 F.2d 833 (8th Cir. 1978) .............................................................................12

*Jennings v. Auto Meter Prods., Inc.*,
    495 F.3d 466 (7th Cir. 2007) .............................................................................12

*Johnson v. United States*,
    64 F.4th 715 (6th Cir. 2023)........................................................................8

*Kattula v. Jade*,
    2007 WL 1695669 (W.D. Ky. June 8, 2007)....................................................10

*Kerman v. Chenery Assocs., Inc.*,
    2007 WL 2363283 (W.D. Ky. Aug. 14, 2007) ...........................................1, 2, 9

*M11 Motors, LLC v. UP Trading, LLC*,
    2017 WL 6624509 (N.D. Ohio Dec. 28, 2017) ...................................................9

*In re Miedzianowski*,
    735 F.3d 383 (6th Cir. 2013) ......................................................................8, 9

*Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*,
    40 F.4th 432 (6th Cir. 2022)........................................................................1

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ...............................................................9, 12, 14

*Rexam Healthcare Packaging, Inc v. Osiris Med., Inc.*,
    2010 WL 819063 (N.D. Ohio Mar. 9, 2010)...................................................10

*Skil Corp. v. Millers Falls Co.*,
    541 F.2d 554 (6th Cir. 1976) .......................................................................11

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017) ...............................................................8, 10, 11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................................12

## Statutes

18 U.S.C. § 1965(b)................................................. 1, 3, 4, 6, 7, 8, 9, 13, 14

28 U.S.C. § 1292(b)......................................................2, 5, 6, 7, 10, 11, 12

**Other Authorities**

Wright & Miller, *Federal Practice & Procedure* (3d ed.) .................................7, 12

## INTRODUCTION

The district court certified a recurring question of personal jurisdiction that divides courts both within this Circuit and nationwide: When a plaintiff invokes nationwide jurisdiction under the "ends of justice" exception for a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, 18 U.S.C. § 1965(b), must the plaintiff show that no other district would have personal jurisdiction over all defendants? Many courts follow the Ninth Circuit's lead in holding that a plaintiff seeking to invoke RICO's nationwide service of process bears that burden. *See Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986). Others side with the Tenth Circuit, where a plaintiff can cherry-pick a favored forum even if all defendants could be sued together elsewhere. *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006).

Still, "[t]he Sixth Circuit has not yet spoken concerning the breadth of the RICO nationwide service provision." *Kerman v. Chenery Assocs., Inc.*, 2007 WL 2363283, at *1 n.2 (W.D. Ky. Aug. 14, 2007); *see also Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 440 n.4 (6th Cir. 2022) (ruling on other grounds rather than "delve into the meaning of § 1965(b)'s 'ends of justice' language"). Because that question has evaded appellate review, there persist

1

"various prognostications from the district courts of the Sixth Circuit's analysis of the statute." *Kerman,* 2007 WL 2363283, at *1 n.2.

In certifying the question, the district court correctly found that the entrenched, continuing split on this important issue of personal jurisdiction presents a compelling case for interlocutory appeal. *See* Add. 33-46. *First*, all the requirements for § 1292(b) review are satisfied. The issue presented is a pure legal question of statutory interpretation, there already exists a substantial difference of opinion within and without this Circuit, and a holding that the "ends of justice" are not satisfied when another district has jurisdiction over all defendants may terminate the litigation here. *Second*, this petition provides an excellent opportunity to resolve an important question of personal jurisdiction tethered to the promiscuous use of civil RICO in cases of garden-variety alleged fraud. *Third*, review is needed because the district court's decision is wrong: RICO nationwide service of process is allowed when it is a necessity—not when it is a mere luxury. So this Court should grant permission to appeal to resolve this important, unsettled, and oft-litigated issue.

## QUESTION PRESENTED

18 U.S.C. § 1965(b) permits jurisdiction over a civil RICO action in a district court "in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court."  The question, on which other Circuits and district courts within this Circuit are split, is whether a RICO plaintiff invoking that "ends of justice" exception in § 1965(b) must show that there is no other district that would have personal jurisdiction over all defendants.

## BACKGROUND

This putative class action arises from Plaintiffs' purchase and financing of home solar systems from Power Home Solar—later known as "Pink Energy."  Disappointed with their purchases, Plaintiffs contend that the systems do not provide the benefits that Pink Energy advertised.  But Plaintiffs did not sue Pink Energy, which is now in bankruptcy.  Instead, Plaintiffs sued Defendants Trivest Partners L.P. ("Trivest") and TGIF Power Home Investor, LLC ("TGIFPHI")—minority shareholders with no alleged decision-making power in Pink Energy.  Complaint, ECF 1, PageID.10.  They assert claims under the Michigan Consumer Protection Act and that

"litigation equivalent of a thermonuclear device," civil RICO. *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 919 (6th Cir. 2020).

It is undisputed that without the RICO claim, Trivest and TGIFPHI would not be subject to personal jurisdiction here. Plfs.' Opp. to Joint Motion to Dismiss, ECF 18, PageID.161. Trivest is a Florida partnership and TGIFPHI is a Delaware LLC; each has its principal place of business in Florida. Complaint, ECF 1, PageID.3-4. Plaintiffs contend, however, that a third defendant (individual William Waller) is subject to jurisdiction in Michigan. *See also* Add. 21 ("Defendants also do not dispute that this court has personal jurisdiction over Waller.").

Trivest and TGIFPHI moved to dismiss, among other reasons, for lack of personal jurisdiction. Joint Motion to Dismiss, ECF 17, PageID.107. Plaintiffs did not dispute that dismissal would be appropriate under a "traditional personal jurisdiction analysis." Plfs.' Opp. to Joint Motion to Dismiss, ECF 18, PageID.161. Instead, they sought jurisdiction only under § 1965(b).

The district court denied the motion to dismiss but "not[ed] a split in the circuits." Add. 22. It rejected the Ninth Circuit's holding that the "ends of justice" require a RICO plaintiff to "show that there is no other district

4

that would have personal jurisdiction over all the defendants." *Id.* (citing *Butcher's Union*, 788 F.2d at 539). Instead, the district court adopted the Tenth Circuit's view that the "'ends of justice analysis is not controlled by the fact that all defendants may be amenable to suit in one forum.'" Add. 22-23 (quoting *Cory*, 468 F.3d at 1232).[1]

Given the persistent division of authority on the question of RICO jurisdiction presented here, Trivest and TGIFPHI moved to certify that Order for interlocutory appeal under 28 U.S.C. § 1292(b). Motion to Certify, ECF 34, PageID.319. The district court granted that motion on February 16, 2024. Add. 33-46. As the court explained, this RICO jurisdictional question is appropriate for certification because it is an "issue of statutory interpretation" and thus "a question of law." *Id.* at 41. There is "substantial ground for difference of opinion given both the circuit split identified in the [Order] and the district court split within the Sixth Circuit." *Id.* at 43. And

---

[1] On the merits, the district court noted that the RICO counts presented "close question[s]" whether the complaint pleaded fraud with particularity and plausibly alleged participation in any scheme to defraud. Add. 12-13.

"[i]f the Sixth Circuit were to disagree … it would likely result in a dismissal of this action" against [Trivest and TGIFPHI]. *Id.* at 42.

## STANDARD FOR GRANTING PERMISSION TO APPEAL

28 U.S.C. § 1292(b) allows an immediate appeal from a non-final order if the district court certifies:  (1) the order "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion" on that question; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation."

## REASONS FOR GRANTING THE PETITION

The district court correctly held that the unsettled, often litigated question presented here meets all the § 1292(b) prerequisites for immediate appeal.  Indeed, Plaintiffs do not dispute that this application meets the second requirement of § 1292(b)—that this RICO jurisdictional issue presents substantial ground for difference of opinion.  Plfs.' Opp. to Motion to Certify, ECF 36, PageID.422.  And the district court was right that the first and third requirements are met.  There is a controlling question of law because jurisdiction over Trivest and TGIFPHI turns on which Circuit's interpretation of § 1965(b) prevails.  And resolving that question as the Ninth Circuit has may materially advance the litigation's ultimate termination by

entitling Defendants to dismissal. Finally, this Court should exercise its discretion to grant this application because it cleanly presents an important, recurring question that the district court got wrong.

## I. The availability of RICO jurisdiction outside a district where all defendants are subject to jurisdiction is a controlling question of law.

As the district court determined, whether "ends of justice" jurisdiction under § 1965(b) requires the lack of a forum with jurisdiction over all defendants is a "controlling question of law." Add. 42. This § 1292(b) element is not a high bar. "[T]he resolution of an issue need not necessarily terminate an action or have precedential value for a number of pending cases to be controlling." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992). Rather, "all that must be shown in order for a question to be controlling is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.*; *see also* Wright & Miller, *Federal Practice & Procedure* § 3930 (3d ed.) ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.").

7

Defendants' interlocutory appeal centers on the correct interpretation of the statutory phrase "ends of justice" in 18 U.S.C. § 1965(b). An issue of "statutory interpretation is a question of law." *Johnson v. United States*, 64 F.4th 715, 721 (6th Cir. 2023). That question of law is controlling as to this litigation generally "because [its] resolution could materially affect the outcome of the case." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). Defendants have moved for dismissal for lack of personal jurisdiction; if that argument prevails, then the case can be dismissed.

## II. There is undisputed substantial ground for difference of opinion.

The district court and parties agree that there is substantial ground for difference of opinion on the question presented. Add. 43; Plfs.' Opp. to Motion to Certify, ECF 36, PageID.422. Substantial grounds exist when "a difference of opinion exists within the controlling circuit" or when "the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

In their own words, "Plaintiffs willingly concede that there is a circuit split on the underlying issue, on which the Sixth Circuit has not yet opined. That appears sufficient to resolve the issue." Plfs.' Opp. to Motion to Certify, ECF 36, PageID.422. In this respect, Plaintiffs are right. Under Ninth Circuit

8

law, Defendants would prevail. *See Butcher's Union*, 788 F.2d at 539 ("the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators"); *see also PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) ("We conclude that the natural reading given to § 1965(b) by the 9th Circuit in *Butcher's Union* … was correct."). The Tenth Circuit interpretation applied by the district court is directly contrary. *Cory*, 468 F.3d at 1232 ("[W]e disagree with the Ninth Circuit.").

Besides that undisputed circuit split, there is "a difference of opinion within [this] circuit." *Miedzianowski*, 735 F.3d at 384; *see also Kerman*, 2007 WL 2363283, at *1 n.2 (noting conflicting "prognostications from the district courts of the Sixth Circuit's analysis of the statute"); Add. 43. As Plaintiffs' own Rule 12 brief recognized, some courts in this Circuit agree with the Ninth Circuit: "'[F]or nationwide service to be imposed under section 1965(b), … the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.'" Plfs.' Opp. to Joint Motion to Dismiss, ECF 18, PageID.168 (quoting *M11 Motors, LLC v. UP Trading, LLC*, 2017 WL 6624509, at *2 (N.D. Ohio Dec. 28,

9

2017) (in turn quoting *Butcher's Union*, 788 F.2d 535)).[2]  Others disagree.[3]  An immediate appeal will enable this Court to resolve this persistent split, without running the risk that the issue will continue to evade appellate review.

### III.    An immediate appeal would materially advance the termination of the litigation.

Immediate appellate resolution of this jurisdictional question would "materially advance the ultimate termination" of this case.    28 U.S.C. § 1292(b); Add. 44.  Simply providing a means of more quickly resolving a case fulfills the mandate that "an immediate appeal may materially advance the termination of the litigation."  *In re Trump*, 874 F.3d at 952.  The standard is *may*—not *must*.  *See id.*  The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law.  *See id.* at 951.

---

[2] *See also High Adventure Ministries, Inc. v. Tayloe*, 309 F. Supp. 3d 461, 472-73 (W.D. Ky. 2018); *Enginetec Corp. v. Boutin*, 2008 WL 11380215, at *4 (N.D. Ohio Dec. 5, 2008); *Kattula v. Jade*, 2007 WL 1695669, at *3 (W.D. Ky. June 8, 2007).
[3] *See Anthony v. Over*, 2023 WL 6307960, at *3 (E.D. Tenn. Sept. 27, 2023); *Doe v. Varsity Brands, LLC*, 2023 WL 4935933, at *16 (N.D. Ohio Aug. 2, 2023); *Rexam Healthcare Packaging, Inc v. Osiris Med., Inc.*, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9, 2010).

The district court was right that "a finding that the court lacks personal jurisdiction would materially affect the outcome of the case, resulting in dismissal of the claims against these Defendants." Add. 44. Dismissal is the quintessential material effect on the litigation. And this is the classic opportunity for interlocutory review that "promote[s] judicial economy by settling [this] highly contested question[] before—potentially needlessly—occupying the Court's and parties' time and attention." *Id.*

Plaintiffs insisted below that this element was not satisfied because the result may be transfer to Florida rather than dismissal. Plfs.' Opp. to Motion to Certify, ECF 36, PageID.419. But this Court's precedent establishes that venue transfer questions are fit for § 1292(b) review. *See, e.g.*, *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir. 1976). And Plaintiffs have not even asked for transfer, so the mere possibility of a transfer remedy does not change the fact that an appeal "*may* materially advance the termination of the litigation." *In re Trump*, 874 F.3d at 952. In any event, Plaintiffs' argument proves too much: if they were right, then § 1292(b) review would be unavailable as a rule for questions of personal jurisdiction. But "personal jurisdiction" is "[a]mong the categories of rulings that may be *obviously* suited for interlocutory appeal within the general criteria of the statute."

11

Wright & Miller, *Federal Practice & Procedure* § 3931 (3d ed.) (emphasis added).[4]   Clearly, this Court can grant review of disputed, controlling questions of personal jurisdiction like this one.

## IV.   The question presented is important, cleanly presented, and wrongly decided below.

The Court not only can but *should* grant this petition, for three compelling reasons.   *First*, the question presented is an important one. Personal jurisdiction "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).   But the district court transformed RICO's narrow loophole—borne of necessity to address interstate schemes—into a jurisdictional black hole "haling defendants into far flung fora." *PT United*, 138 F.3d at 72.   The abusive effects of that rule would be multiplied when combined with the all-too-promiscuous use of civil RICO for ordinary alleged fraud.   *See, e.g.*, *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) ("[T]he statute was never intended to allow

---

[4] *See also, e.g.*, *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (§ 1292(b) petition granted to appeal denial of motion to dismiss for lack of personal jurisdiction); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990); *Hutson v. Fehr Bros.*, 584 F.2d 833, 834 (8th Cir. 1978) (same).

plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."). This Court's intervention is needed to restore this foundational jurisdictional protection to its rightful place.

*Second*, this petition is an excellent vehicle for resolving the question presented. There is no dispute that this case presents the § 1965(b) question; that is the only proffered basis for jurisdiction over Trivest and TGIFPHI. Indeed, it is undisputed that "traditional personal jurisdiction analysis" cannot establish jurisdiction over them. Plfs.' Opp. to Joint Motion to Dismiss, ECF 18, PageID.161. And the district court resolved the legal question on an early motion to dismiss without discovery or any extraneous facts to cloud the record.[5] So this Court can render a decision providing clear guidance for bench and bar without the need to address any factual disputes.

*Third*, appellate review is needed because the district court's interpretation of § 1965(b) was incorrect. As the Second Circuit observed, "§ 1965 does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found."

---

[5] Indeed, after certifying the Order, the district court refused to initiate discovery "[u]ntil such time as any appeal has been resolved." Order, ECF 50, PageID.576-77.

*PT United*, 138 F.3d at 71; *see also Butcher's Union*, 788 F.2d at 539 (§ 1965(b) does not create an "unlimited" right to nationwide service for RICO claims). Instead, the "first preference" is to "bring the action where suits are *normally expected to be brought.*" *Id.* at 71-72 (emphasis added). Section 1965(a) thus provides a default rule of RICO jurisdiction over a person in a "district in which such person resides, is found, has an agent, or transacts his affairs."

The exception to that rule in § 1965(b) is narrow:  it merely meant "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union*, 788 F.2d at 539. But the "ends of justice" require no special rule *unless* there is "no district with personal jurisdiction over all defendants." *PT United*, 138 F.3d at 71 n.5.  In other words, when there is already a district with jurisdiction over all defendants, there is no "jurisdictional gap" for § 1965(b) to fill. *Butcher's Union*, 788 F.2d at 539.  A contrary reading would allow a plaintiff to "merely nam[e] persons in a RICO complaint" to gain the benefit of § 1965(b)'s extraordinary nationwide service provision.  *See id.*  The district court's contrary interpretation failed to read § 1965 as a whole and thus transmuted a narrow exception into an astounding new jurisdictional rule.  Congress

14

would not have created such a regime lightly, and certainly not without speaking plainly in the statutory text.

## CONCLUSION

For these reasons, this Court should grant permission to appeal the order denying Defendants' motion to dismiss.  Add. 1-32.

Dated:  February 26, 2024

Respectfully submitted,

**McGuireWoods LLP**

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
R. Trent Taylor
Frank Talbott V
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
Facsimile: (804) 698-2304
bschmalzbach@mcguirewoods.com

*Counsel for Defendants-Petitioners*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the length limitation Fed. R. App. P. 5(c)(1) because it contains 2,979 words, excluding the parts of the petition exempted by Fed. R. App. P. 5(b)(1)(E) and Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 point size.

Dated:  February 26, 2024          **MCGUIREWOODS LLP**

*/s/ Brian D. Schmalzbach*
*Counsel for Defendants-Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, I electronically filed this Petition for Permission to Appeal with the Clerk of this Court using the appellate CM/ECF system. I further certify that on the same day, I caused true and correct copies of this Petition, with attachments, to be served by email and overnight mail at these addresses:

Nicholas A. Coulson
Matthew Z. Robb
LIDDLE SHEETS COULSON P.C.
975 East Jefferson Avenue
Detroit, MI 48207
ncoulson@lsccounsel.com
mrobb@lsccounsel.com

*Attorneys for Plaintiffs-Respondents*

MCGUIREWOODS LLP

*/s/ Brian D. Schmalzbach*
*Counsel for Defendants-Petitioners*

17

# ADDENDUM

**Pages**

Opinion and Order Granting in Part and Denying in Part
Motion to Dismiss, ECF 32 (Sept. 12, 2023)............................. Add. 1-32

Opinion and Order Granting Motion for Certificate of
Appealability, ECF 49 (Feb. 16, 2024) ..................................... Add. 33-46

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,                                       Case No. 22-12743

      Plaintiffs,                                          F. Kay Behm

v.                                                         United States District Judge

TRIVEST PARTNERS, L.P., *et al.*,

      Defendants.

_____ /

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE COMPLAINT (ECF No. 17)

### I. PROCEDURAL HISTORY

Plaintiffs filed this RICO action on November 12, 2022. (ECF No. 1).

Defendants Trivest Partners L.P. and TGIF Power Home Investor, LLC filed a

motion to dismiss the complaint on February 15, 2023. (ECF No. 17). The matter

is fully briefed. (ECF Nos. 18, 20). Pursuant to notice, the court held a hearing via

video teleconference on August 2, 2023. (ECF No. 21). For the reasons set forth

below, the court **DENIES** the motion to dismiss in its entirety, except that

Plaintiffs' claim under § 1962(a) is **DISMISSED**.

### II. FACTUAL BACKGROUND

Plaintiffs filed this action against Defendants Trivest, TGIF, and William

Jayson Waller. (ECF No. 1). Plaintiffs allege that the three Defendants violated

**Add. 1**

RICO through a pattern of racketeering activity involving their conduct with Power Home Solar, LLC (PHS), also known as Pink Energy (PE). *Id.* The Complaint outlines an allegedly fraudulent scheme designed to lure consumers into purchasing home solar systems to be designed, installed, and sold by PHS/PE, and which was carried out by Defendants through multiple uses of the mail and wires. *Id.* The scheme included numerous false and misleading advertisements, training materials, and other communications designed to achieve its goals.

Trivest is a private investment limited partnership organized under the laws of Florida with its principal place of business in Florida. (ECF No. 1, ¶ 13). TGIF is a limited liability company organized under the laws of Delaware with its principal place of business in Florida. *Id.* at ¶ 4.[1] Plaintiffs allege that Trivest, through TGIF, purchased an approximately 25% stake in PHS and that Trivest took a "hands-on role in managing all aspects of the business along with Defendant Waller." (ECF No. 1, ¶¶ 7, 62). The Complaint alleges that this "hands-on role" included providing financial support for and participating in PHS's massive advertising campaign. *Id.* at ¶ 7; see also *id.* at ¶ 71 ("Trivest, including but not exclusively

---

[1] According to Defendants, TGIF is part of the Trivest Growth Investment Fund. See https://www.trivest.com/wp-content/uploads/2021/11/TGIF_Overview.pdf. The fund makes non-control, minority investments in fast-growing founder- and family-owned businesses. *Id.*

**Add. 2**

through its subsidiary TGIF, participated in the management of PHS's marketing

sales, and business as a whole.").

Plaintiffs each purchased a home solar system from PHS. (ECF No. 1, ¶¶ 90-

92). Plaintiffs contend that PHS represented that their systems would reduce

electricity bills between 70% and 90% and they would, in many instances, receive

government rebate checks to cover part or all of the purchase costs. *Id*. at 36.

Plaintiffs allege that they relied on PHS's representations related to "expected

production and functionality" of the systems when making their financed

purchases. *Id*. at ¶¶ 90-92. 93. Yet, after the systems were installed, it became

apparent that the systems were not functioning as they were supposed to. *Id.* at

¶ 93. Plaintiffs' electricity bills were not reduced in any amount near 70-90%, if at

all, and in some instances their electricity bills actually increased. *Id*. at ¶ 94. The

Complaint alleges that Defendants knew that customers' electric bills were not

being reduced by anywhere near the promised numbers, because it had access to

real-time monitoring information about their Systems' production. *Id*. at ¶ 95.

When the Plaintiffs complained to PHS about these issues, they were informed

that the problems were remediable and would be resolved, but the systems could

not be fixed because they were improperly designed and installed. *Id*. at ¶¶ 97-

98.

**Add. 3**

The Complaint alleges that Trivest and TGIF committed "countless acts of mail and wire fraud" through PHS by causing PHS to send out false, misleading, and fraudulent advertisements, communications, training materials, and instructions through the mail and wires (via internet, telephone and fax). *Id*. at ¶ 72. The Complaint goes on to describe how PHS, at the direction of Defendant Waller and with the involvement of Trivest and TGIF, posted thousands of misleading advertisements. *Id.* at ¶¶ 73-79.

## III. ANALYSIS

### A. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a

**Add. 4**

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At

**Add. 5**

the motion-to-dismiss stage, the court does not consider whether the factual

allegations are probably true; instead, a court must accept the factual allegations

as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed

"on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of the facts alleged is improbable"); *see*

*also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not

countenance ... dismissals based on a judge's disbelief of a complaint's factual

allegations"). Indeed, in assessing the sufficiency of a complaint, the court must

determine only whether "'the claimant is entitled to offer evidence to support the

claims,' not whether the plaintiff can ultimately prove the facts alleged." *See*

*United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D.

Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

   B.   RICO Claims

      1.   *Does the Complaint State the RICO Claims with Sufficient*
         *Particularity?*

Defendants argue that Plaintiffs have not pleaded their RICO claims with

sufficient particularity. *See e.g.*, *Gotham Print, Inc. v. Am. Speedy Printing Ctrs.,*

*Inc.*, 863 F. Supp. 447, 457-58 (E.D. Mich. 1994) (stating that courts have

"repeatedly held" that predicate acts of mail and wire fraud must be pleaded with

**Add. 6**

particularity).  A plaintiff must plead the "time, place, subject matter and the precise individuals who, through the use of the mails or telephone, made the purportedly fraudulent statements."  *Gotham Print, Inc.*, 863 F. Supp. at 457-58.  This also requires specific allegations "as to which defendant caused what to be mailed . . . and when and how each mailing . . . furthered the fraudulent scheme."  *Id*. at 458.  Defendants argue that the Complaint contains conclusory allegations that "Trivest and TGIF[PHI] committed countless acts of mail and wire fraud through PHS/PE by causing it to send out false, misleading, and fraudulent advertisements, communications, training materials, and instructions through the mails and wires (by internet, telephone, and/or fax) as alleged herein."  (ECF No. 1, ¶ 72).  And the subsequent references to mail or wire fraud simply accuse "Defendants" of committing such acts without differentiating among the Defendants at all.  *Id*. at ¶¶ 135, 136, 142, 143, 144, 152, 153.  The Complaint also contains, according to Defendants, only general references to "advertising materials," *id*. at ¶ 135, and does not actually specify what "advertising material" was sent, who sent it, when they sent it, or on what advertising material Plaintiffs may have relied.  Thus, Defendants argue, the Complaint fails to plead any predicate RICO violation with particularity.

**Add. 7**

In response, Plaintiffs distill Defendants' argument down to a single sentence: "Defendants assert that Plaintiffs must plead *specific* acts of mail and/or wire fraud *by the moving Defendants* upon which *Plaintiffs actually relied*." (ECF No. 18, PageID.170). According to Plaintiffs, RICO does not operate in this fashion. Plaintiffs contend that Defendants need not have committed any acts of wire or mail fraud themselves, citing *Fenner v. GM, LLC (In re Duramax Diesel Litig.)*, 298 F. Supp. 3d 1037, 1082 (E.D. Mich. 2018).

As explained in *Fenner*, "[w]hen pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Heinrich v. Waiting Angels Adoption Servs., Inc*., 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008)).

To state a claim based on mail or wire fraud, Plaintiffs must allege the following three elements: "(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so." *Fenner*, 298 F.Supp.3d at 1082 (quoting *United States v. Kennedy*, 714 F.3d 951, 958 (6th

**Add. 8**

Cir. 2013) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997))). The

plaintiffs must also allege that defendants possessed the "specific intent to

deceive or defraud." *Id.* (quoting *Frost*, 125 F.3d at 354). The "scheme to defraud

must involve misrepresentations or omissions reasonably calculated to deceive

persons of ordinary prudence and comprehension." *Id.*(quoting *Bender v.*

*Southland Corp*., 749 F.2d 1205, 1216 (6th Cir. 1984) (citation and quotation

marks omitted)). While the plaintiffs need not show "actual reliance," they still

must demonstrate that the misrepresentations or omissions were "material." *Id.*

(quoting *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003)). Specific intent

to defraud or deceive exists if "the defendant by material misrepresentations

intends the victim to accept a substantial risk that otherwise would not have been

taken." *Daniel*, 329 F.3d at 488.

    *Fenner* also explains that "[a] defendant may commit mail fraud even if he

personally has not used the mails." *Fenner*, 298 F.Supp.3d at 1082 (quoting *Frost*,

125 F.3d at 354). "A mail fraud conviction requires only a showing that the

defendant acted with knowledge that use of the mails would follow in the

ordinary course of business, or that a reasonable person would have foreseen use

of the mails." *Id*. (quoting *Frost*, 125 F.3d at 354). In other words, there is no

requirement that the defendant have actually intended that the mails (or wire) be

**Add. 9**

used.  *Id*. (citing *Frost*, 125 F.3d at 354).  And, further, "[t]he mailings may be

innocent or even legally necessary."  *Id*. (quoting *Frost*, 125 F.3d at 354) (citation

and quotation marks omitted).  The use of the mails "need only be closely related

to the scheme and reasonably foreseeable as a result of the defendant's actions."

*Id*. (quoting *Frost*, 125 F.3d at 354) (citation and quotation marks omitted).

The facts in *Fenner* bear some resemblance to the present facts.  In *Fenner,*

the plaintiffs filed a complaint against defendants General Motors (GM), and two

Bosch corporate entities.  The plaintiffs alleged that GM represented that its

Duramax diesel engine featured low emissions and high performance, charged a

premium for that engine, and the engine did not actually combine high power and

low emissions as represented.  *Id*. at 1046-47.  The plaintiffs alleged that the

vehicles' promised power, fuel economy, and efficiency was obtained only by

turning off or turning down emissions controls when the software in these

vehicles sensed they were not in an emissions testing environment.  *Id*. at 1047.

According to the complaint, this was achieved by the use of "defeat devices."  *Id.*

The complaint explained that GM did not act alone is developing this scheme.

The Bosch defendants developed and manufactured the "electronic diesel

control" (EDC) device that allowed GM to implement the defeat device.  *Id*. at

1048.  In the amended complaint, the plaintiffs quoted, summarized, or

**Add. 10**

reproduced approximately ten pages of GM advertising, press releases, and publications related to the emissions production and fuel economy of its diesel engines. *Id*. at 1049.

The Bosch defendants argued that the complaint failed to allege that they used the mail or wire to defraud. *Id*. at 1084. The court rejected this argument because "a defendant can be found culpable simply by entering into the scheme to defraud if a co-defendant's use of the mail or wire was reasonably foreseeable and closely related to the scheme." *Id.* More specifically, the court concluded that the plaintiffs had adequately alleged a number of uses of the mail and wire that furthered the fraudulent scheme:

> GM submitted applications to government regulators
> which affirmed that the vehicles complied with emission
> standards. Without those mailings and electronic
> communications, GM would have been unable to sell
> the vehicles. The applications and resulting certificates
> also increased the likelihood that consumers would
> perceive the Duramax vehicles as emitting pollution at a
> low level. And although Bosch may not have directly
> used the mail or wire to further the fraudulent scheme,
> GM's uses of the mail and wire were inevitable and thus
> reasonably foreseeable.

*Id*. at 1084.

Here, the Complaint alleges even more direct action by Defendants than by the Bosch defendants in *Fenner*. While PHS is primarily alleged to have used the

**Add. 11**

mail and wire for its fraudulent advertisements, the Complaint also alleges that Defendants were involved in the posting of thousands of misleading advertisements on social media, mostly on Meta's Facebook platform. (ECF No. 1, at ¶¶ 73-79).[2]  Similarly, while Defendants may not have directly used the mail or wire to further the fraudulent scheme, PHS did so and its uses were the reasonably foreseeable result of Defendants' alleged involvement and participation in the advertising campaign by providing "funding, guidance, and oversight for the campaign." (ECF No. 1, ¶ 75).  In *Fenner*, the court also did not find the lack of detail regarding the identity of the employee who prepared the mailings or the precise dates of the predicate acts to be fatal.  *Id.* at 1084. Instead, the court concluded that the complaint alleged enough detail to put the defendants on notice of the alleged predicate acts.  *Id.*  Likewise here, the Complaint identifies the post-January 1, 2018 time frame, and offers screenshots of several internet advertisements alleged to be the predicate acts.  (ECF No. 1, ¶¶ 62, 78).  Thus, while it is a close question, the court finds that the Complaint is sufficiently specific under Rule 9(b), Plaintiffs' allegations cross the threshold of plausibility, and dismissal on this basis is denied.

---

[2]  According to the Complaint, PHS filed bankruptcy and in a recent filing, it reported that it owed over $4 million to Meta.  (ECF No. 1, ¶ 74).

**Add. 12**

Defendants' argument that this case is more like *Kerrigan v. Visalus, Inc.*,

2016 WL 892804 (E.D. Mich. Mar. 9, 2016) is unavailing.  There, the court found

that the allegations of mail and wire fraud were insufficient to state a claim

because the allegations on which the plaintiff relied did not claim that the

defendant "either used the mails or wires on at least two occasions or caused

someone else to do so."  *Id*. at *4.  More specifically, while the plaintiff alleged

that the defendant appeared in the videos posted on the internet, the complaint

failed to plead any facts to support a finding that the defendant *caused* the videos

to be published online, *authorized* their publication, or even had knowledge of

their publication.  *Id*.  In contrast, the Complaint here alleges that Defendants

participated in the management of PHS's marketing, sales, and business (ECF No.

1, ¶ 71), participated in the conception, design, and creation of the advertising

campaigns, and provided "guidance and oversight" for the campaign, *id.* at ¶ 75.

While again, this is a close question, the court finds these allegations sufficient to

nudge the claim over the line of facial plausibility.

2.    *Do Plaintiffs Lack RICO Standing?*

Defendants characterize their next argument as a standing issue, but really,

they are asserting a lack of proximate cause, which is not part of the standing

analysis.  *See Fenner*, 298 F.Supp.3d at 1053 (quoting *Lexmark Int'l, Inc. v. Static*

**Add. 13**

*Control Components, Inc*., 572 U.S. 118 (2014) ("Proximate causation is not a requirement of Article III standing.")).  More specifically, Defendants argue that the Complaint fails to sufficiently allege that Plaintiffs are persons "injured in [their] business or property by reason of a [RICO] violation."  18 U.S.C. § 1964(c).  The language "by reason of" makes proximate cause an essential ingredient of any civil RICO claim.  *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992).  The "central question" for proximate causation is "whether the alleged violation led directly to plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  "But for" causation is insufficient.  *Id*. at 456-57.  Defendants argue that Plaintiffs have failed to allege proximate causation here against them.  Instead, they suggest that the alleged proximate causes of Plaintiffs' injuries were PHS's misrepresentations made via its advertising campaign, (ECF No. 1, ¶¶ 90-92), not any investment by Trivest or TGIF.  Defendants assert that, at most "but for" their investment, PHS might not have been able to make those advertisements, which it argues is insufficient to meet the proximate cause requirement.

Plaintiffs contend that Defendants ask the court to apply the wrong standard by requiring the Complaint to specifically link Defendants' individual predicate acts to Plaintiffs' injuries.  Instead, Plaintiffs argue that they have

**Add. 14**

satisfied the proximate cause requirement by alleging that Defendants entered into a scheme to defraud in which the mail and wires were used, and that Plaintiffs were injured as a proximate result of that scheme.

The court agrees with Plaintiffs. In *Wallace v. Midwest Financial & Mortg. Serv. Inc.*, 714 F.3d 414, 420 (6th Cir. 2013), the court held that a RICO plaintiff "need only show use of the mail in furtherance of a scheme to defraud and an injury proximately caused by that scheme." *Id.* (quoting *Anza,* 547 U.S. at 649–50). In *Wallace*, the court explained that there are many ways to establish proximate cause, including whether there is a "direct relation between the injury asserted and the injurious conduct alleged" or whether the plaintiff's injury was a "foreseeable consequence of the conduct alleged." *Id*. at 419 (citations omitted). As discussed above, while Defendants may not have directly used the mail or wire to further the fraudulent scheme, PHS did so and its uses were the reasonably foreseeable result of Defendants' alleged involvement and participation in the advertisement campaign by providing "funding, guidance, and oversight for the campaign." (ECF No. 1, ¶ 75). Accordingly, the Complaint sufficiently alleges proximate cause.

**Add. 15**

### 3. Does the § 1962(a) Claim Fail?

Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise...." 18 U.S.C. § 1962(a). To state a § 1962(a) claim, a plaintiff must (1) allege when each defendant received income from a pattern of racketeering activity; (2) clearly identify the pattern of racketeering activity from which the income was derived; and (3) plead when each defendant invested funds in the alleged RICO enterprise. *Kerrigan v. ViSalus, Inc*., 112 F. Supp. 3d 580, 611 (E.D. Mich. 2015).

Defendants argues that Plaintiffs' § 1962(a) claim fails because their only theory of injury under § 1962(a) is that they were harmed because "Defendant PHS/PE used . . . ill-gotten revenues to expand their operations and continue spreading their scheme throughout the United States, while PHS/PE's significantly[-]increased valuation and soaring profits led to substantial financial gain for both Waller personally and Trivest professionally." (ECF No. 1, ¶ 138). Plaintiffs concede that this claim should be dismissed. (ECF No. 18, PageID.161, n. 1). Given Plaintiffs' concession, the motion to dismiss is granted on this claim.

16

**Add. 16**

4. *Does the § 1962(c) Claim Fail?*

To survive a motion to dismiss a RICO claim under § 1962(c), a plaintiff must allege: (1) a defendant's conduct, (2) an enterprise, and (3) a pattern of racketeering activity. 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1962(c)). Defendants argue that Plaintiffs' Complaint does not satisfy the enterprise requirement because Plaintiffs allege that all Defendants were at least part owners of PHS/PE. "An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Begala v. PHC Bank, Ohio Nat'l Ass'n*, 214 F. 3d 776, 781 (6th Cir. 2000). According to Defendants, a plaintiff cannot satisfy this requirement by alleging a RICO enterprise that "merely consists of a corporate defendant associated with its own employees carrying on the regular affairs of the defendant." *Manhattan Tele. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001).

Plaintiffs contend that Defendants' argument is contrary to long-established Sixth Circuit precedent. *See In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013). In *ClassicStar*, the Sixth Circuit explains the difference between the "person" and the "enterprise" for purposes of § 1962(c):

> The RICO statute makes it unlawful for "any person ... associated with any enterprise ... to conduct or

17

**Add. 17**

> participate, directly or indirectly, in the conduct of such
> enterprise's affairs through a pattern of racketeering
> activity." 18 U.S.C. § 1962(c).  A RICO "person" can be
> either an individual or a corporation.  *Id*. § 1961(3).  A
> RICO "'enterprise' includes any individual, partnership,
> corporation, association, or other legal entity, and any
> union or group of individuals associated in fact although
> not a legal entity." *Id*. § 1961(4).  The enterprise itself is
> not liable for RICO violations; rather, the "persons" who
> conduct the affairs of the enterprise through a pattern
> of racketeering activity are liable.  *United States v. Philip
> Morris USA, Inc.*, 566 F.3d 1095, 1111 (D.C. Cir. 2009). To
> establish liability under § 1962(c), a plaintiff "must allege
> and prove the existence of two distinct entities: (1) a
> 'person'; and (2) an 'enterprise' that is not simply the
> same 'person' referred to by a different name." *Cedric
> Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121
> S.Ct. 2087, 150 L.Ed.2d 198 (2001).

*In re ClassicStar*, 727 F.3d at 490.  This principle is known as the "non-identity" or

"distinctness" requirement.  *Id.* (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d

776, 781 (6th Cir. 2000)).  "Under RICO, a corporation cannot be both the

'enterprise' and the 'person' conducting or participating in the affairs of that

enterprise." *Id*. (quoting *Begala*, 214 F.3d at 781).  As explained in *Begala*, a

corporation may not be liable under § 1962(c) for participating in the affairs of an

enterprise that consists only of its own subdivisions, agents, or members.  *Id*.  This

means that an organization cannot join with its own members to undertake

regular corporate activity and thereby become an enterprise distinct from itself.

*Id*.

**Add. 18**

Yet, this does not mean that associated corporations cannot form an enterprise. Indeed, after examining more recent cases from the Supreme Court and the evolution of this theory in this circuit and others, the Sixth Circuit concluded that: "1) individual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf; and 2) corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *In re ClassicStar*, 727 F.3d at 492.

Notably, in *ClassicStar*, the alleged RICO enterprise was comprised of "other entities that were neither owned by GeoStar nor acting as its agents." *Id*. at 493. Here, while Trivest and TGIF are alleged to have a 25% ownership interest in PHS, they are not wholly owned subsidiaries nor is there an allegation that they acted as agents of PHS. And given that partial ownership relationship of approximately 25%, it is plain that Trivest and TGIF are functionally separate from PHS. Thus, the distinctness requirement is satisfied. Accordingly, the court declines to dismiss the § 1962(c) claim on the basis that the Complaint fails to sufficiently allege the existence of an enterprise.

**Add. 19**

### 5. Does the § 1962(d) Claim Fail?

To allege a plausible violation of RICO conspiracy under § 1962(d), a plaintiff must state facts sufficient to demonstrate all the elements of a RICO violation and plead the "existence of an illicit agreement to violate the substantive RICO provision." *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 459 (6th Cir. 2019) (citing 18 U.S.C. § 1962(d)). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

Defendants argue that this claim fails because Plaintiffs have not pleaded a cognizable RICO claim and, thus, they cannot proceed on a conspiracy claim. *See Am. Biocare, Inc. v. Howard & Howard Att'ys, PLLC*, 2016 WL 5661583, *12 (E.D. Mich. Sept. 30, 2016), aff'd, 702 F. App'x 416 (6th Cir. 2017) (Where Plaintiffs fail to make a claim for a violation of RICO, they have no claim under § 1962(d)). As set forth above, the court has concluded that Plaintiffs' Complaint plausibly alleges a RICO claim. Accordingly, the motion to dismiss this claim is denied.

### C. Personal Jurisdiction

Defendants' motion engages in a lengthy analysis applying the traditional notions of personal jurisdiction and claims that this court does not have personal

**Add. 20**

jurisdiction over them.  In response, Plaintiffs do not attempt to persuade the

court that it has such traditional personal jurisdiction over Defendants.  Instead, it

points out that the traditional personal jurisdiction analysis does not apply in RICO

cases.  In RICO cases, "[Section] 1965(b) extends personal jurisdiction through

nationwide service of process over 'other parties residing in any other district,' as

long as venue is proper through [Section 1965](a) with that initial defendant and

the 'ends of justice' require it."  *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40

F.4th 432, 440 (6th Cir. 2022).  Finding jurisdiction over the moving Defendants

only "requires at least one defendant with traditional forum state contacts … such

that any number of defendants from other districts may be joined under

§ 1965(b)."  *Id*. at 441.  Plaintiffs argue that this court has personal jurisdiction

over Defendant Waller, who personally transacted business throughout Michigan

through PHS and this makes venue proper here as well.

In reply, Defendants concede that "RICO jurisdiction may exist over every

defendant if jurisdiction exists over a single defendant."  (ECF No. 20,

PageID.191).  Defendants also do not dispute that this court has personal

jurisdiction over Waller.  But Defendants contend that Plaintiffs cannot satisfy the

"ends of justice" requirement found in § 1965(b) because they have not

adequately pleaded a RICO claim.  *See Prakash v. Altadis U.S.A. Inc.*, 2012 WL

**Add. 21**

1109918, at *16 (N.D. Ohio Mar. 30, 2012) (citations omitted) (alterations in original) ("[w]hether a plaintiff can rely on the nationwide service provisions of a federal statute '[d]epends upon whether [he] has adequately stated a claim' for violation of that statute."). Given the court's conclusion above that Plaintiffs' Complaint plausibly states a RICO claim, Defendants' objection to the application of § 1965(b) on this basis fails.

Defendants also contend that Plaintiffs must show that no other district can host the litigation. Defendants point to *Peters Broadcast* in support of this argument, but *Peters Broadcast* contains no such holding. Indeed, the Sixth Circuit declined to address the parameters of the term "interests of justice." *Peters Broadcast*, 40 F.4th at 440 n. 4. Before and after *Peters Broadcast* was issued, some district courts within this circuit have, however, undertaken such an analysis, noting a split in the circuits: one circuit found that a RICO plaintiff must show that there is no other district that would have personal jurisdiction over all the defendants. *Doe v. Varsity Brands, LLC*, 2023 WL 4935933 (N.D. Ohio Aug. 2, 2023) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)). The Tenth Circuit rejected this notion, concluding that the "'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum." *Id*. (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226,

**Add. 22**

1232 (10th Cir. 2006)).  The *Varsity Brands* case and *Rexam Healthcare Packaging,*

*Inc. v. Osiris Med., Inc.*, No. 3:09-CV-1584, 2010 WL 819063, at *5 (N.D. Ohio Mar.

9, 2010) both adopted the Tenth Circuit's standard, finding its reasoning for

disagreeing with the Ninth Circuit persuasive:

> In so holding, the Tenth Circuit cited persuasive evidence
> that Congress modeled RICO § 1965(b) on antitrust laws
> that "prescribe[d] an 'ends of justice' analysis for
> allowing 'other parties' to be summoned before the
> court, 'whether they reside in the district in which the
> court is held or not.'" *Id*. at 1232 (quoting 15 U.S.C. §§ 5
> (Sherman Act), 10 (Wilson Tariff Act), & 22 (Clayton
> Act)). The Tenth Circuit also noted that it would be
> inconsistent with RICO's purpose of "eradicat[ing]
> organized crime" to force a RICO plaintiff to litigate in an
> inconvenient judicial district "whenever organized
> criminals operate within the same locale and cause harm
> in a distant state." *Id*. at 1232.

*Varsity Brands*, at *15 (quoting *Rexam*, *5).  This court agrees with the reasoning

in *Varsity Brands* and *Rexam* and will follow the Tenth Circuit standard.  The court

concludes, therefore, that merely because there is a district in which the court

may have personal jurisdiction over all the defendants does not mean that

commencing litigation here necessarily violates the "interests of justice."

Instead, the court looks weighs a number of factors.  In *Rexam*, the court

identified several factors that other courts have considered when determining

whether the interests of justice would be served, including: "the desirability of

**Add. 23**

having the whole action litigated in one court[,] the cost of the delay involved in

transferring the case to another forum[,] and the general balance of hardships

between plaintiff and defendant." *Id*. (cleaned up).  While there may not be a

danger of duplicative actions here given that it appears the entire case could be

litigated in Florida, this case has already been pending since November 2022, and

transferring the matter would cause undue delay.  *See Varsity Brands*, at *17;

*Rexam*, at *5.  Additionally, the inconvenience to Defendants in litigating this

matter here is no greater than the inconvenience to Plaintiffs in litigating this

matter in Florida and the burden on Defendants is minimal, given that they have

competent counsel located in Michigan and "can easily conduct most of their

litigation via electronic means." *Varsity Brands*, at *17; *see also*, *Rexam*, at *5-6.

On balance, the interests of justice factors weigh in favor of retaining the

litigation here.  Accordingly, the court denies the motion to dismiss on the alleged

lack of personal jurisdiction.

    D.    <u>MCPA</u>

        *1.    Economic loss doctrine*

Defendants maintain that Plaintiffs' MCPA claim is barred by the economic

loss doctrine.  The economic loss doctrine provides that "[w]here a purchaser's

expectations in a sale are frustrated because the product he bought is not

**Add. 24**

working properly, his remedy is said to be in contract alone, for he has suffered

only economic losses." *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512,

520 (1992) (internal quotation marks omitted).  It applies to "transactions

involving the sale of goods for commercial purposes where economic

expectations are protected by commercial and contract law, and those involving

the sale of defective products to individual consumers who are injured in a

manner which has traditionally been remedied by resort to the law of torts."  *Id*.

Defendants claim that the economic loss doctrine bars claims under the MCPA,

citing a footnote in *Murphy v. The Proctor & Gamble Co*., 695 F. Supp. 2d 600, 606

n.3 (E.D. Mich. 2010) ("The underlying rationale of the economic loss doctrine is

applicable to claims under the Consumer Protection Act.").[3]  A competing

footnote in a Michigan Court of Appeals case suggests otherwise:

> The other ground [cited by the trial court] for dismissing
> the MCPA claims was that they were barred by the
> economic loss doctrine.  We conclude that this was error
> as well because the economic loss doctrine only applies
> to tort claims (e.g., product liability claims) arising from
> a sale.  *Quest Diagnostics, Inc v. MCI WorldCom, Inc*, 254
> Mich. App 372, 380; 656 NW2d 858 (2002). Therefore,

---

[3] The case on which the court relies for the proposition that the economic loss doctrine
bars MCPA claims – *Williams v. Scottrade, Inc*., 2006 WL 2077588, *7 (E.D. Mich. July 24, 2006)
– does not so hold.  Instead, the *Williams* court found that the plaintiff's fraud-based claims
(which included the MCPA claim) were not sufficiently pleaded with particularly under Rule
9(b).  *Id*.  The court found that the economic loss doctrine only barred the unintentional
tortious conduct.  *Id*. at *5-6.

**Add. 25**

> we conclude that the trial court erred in granting
> defendant summary disposition on these grounds.

*Prose v. Sun & Ski Marina*, No. 245823, 2004 WL 2827197, at *5 (Mich. Ct. App. Dec. 9, 2004). Other courts have concluded that analogous claims under other statutory consumer protection schemes were not barred by the economic loss doctrine. *See e.g.*, *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427 (E.D. Pa. 2015) (Noting that state intermediary court held that the economic loss doctrine did not bar statutory fraud claims brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Act) (citing *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. 2013)); *Tungate v. Volvo Trucks of N. Am.*, LLC, 2009 WL 4249200, at *2 (M.D. Tenn. Nov. 24, 2009) (holding that Tennessee's economic loss doctrine does not preclude a Tennessee Consumer Protection Act claim involving the sale of goods). It makes little sense to suggest that the economic loss doctrine bars claims under the MCPA as applied to the sale of goods because the MCPA itself specifically applies to goods. *See e.g.*, Mich. Comp. Laws § 445.903(1)(a)-(h); (k)-(l), (r), (hh). Were this the case, the exception found in the economic loss doctrine would swallow the statute.

Finally, the transactions here involved the sale of goods along with design and installation services, which Plaintiffs argue preclude application of the economic loss doctrine. (*See* ECF No. 1, ¶ 3) ("These Systems would be

**Add. 26**

"designed" and installed by poorly trained, unqualified and unlicensed

technicians, all but ensuring that the systems would not perform at even a

significant fraction of what the company's agents represented."); ¶ 30 ("PHS not

only did not require NABCEP certification of its design and installation employees,

it disregarded the necessary training and certification entirely – in favor of

minimal two day training programs designed by Defendant Waller."); ¶ 31 ("PHS

sent poorly trained salespeople into potential customers' homes in the role of

designers, purportedly aided minimally by an offsite 'design team,' (which would

nearly instantly provide 'plans' for solar installations) and utilized completely

unqualified installers, ensuring that no qualified person ever laid eyes on a

customer's home or hands on their system."); ¶ 53 ("PHS's business model

completely ignored the proper design, arrangement, and installation of the

Systems purchased by Plaintiffs and the Class, meaning that contrary to its

promises to save customers money, it was burdening them with expensive, ill-

functioning Systems instead.").  Michigan's economic loss "doctrine is associated

with 'transactions in goods,' not with transactions in services." *Cargill, Inc. v.

Boag Cold Storage Warehouse*, 71 F.3d 545, 550 (6th Cir. 1995) (citations

omitted).

**Add. 27**

Michigan courts apply the predominant factor test to determine whether a contract primarily involves the sale of goods or the sale of services, which asks whether the primary purpose of the contract is for the sale of goods or the provision of services. *DaimlerChrysler Corp. v. Wesco Distribution*, 281 Mich. App. 240, 245 (2008). Generally, the question whether goods or services predominate in a hybrid contract is one of fact. *Frommert v. Bobson Const. Co*., 219 Mich. App. 735, 738 (1996) (citing *Higgins v. Lauritzen*, 209 Mich. App. 266, 269 (1995)). The court cannot determine, in the context of this motion to dismiss, whether good or services predominate the transactions at issue. *See Frommert*, 219 Mich. App. at 738 ("Where there is no genuine issue of any material fact regarding the provision of the contract, a court may decide the issue as a matter of law."). For all these reasons, the motion to dismiss the MCPA claim based on the economic loss doctrine is denied.

### 2. Safe harbor provision

Defendants also argue that the MCPA's safe harbor provision bars the MCPA claim. Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful ...." Mich. Comp. Laws § 445.903(1). The MCPA contains an exemption found in § 4(1)(a) that exempts any "transaction or conduct specifically authorized under laws

**Add. 28**

administered by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  The party claiming the exemption bears the burden of proving its applicability.  *Liss v. Lewiston-Richards, Inc*., 478 Mich. 203, 208 (2007).

In *Liss*, the court explained that, applying the test from *Smith v. Globe Life Ins. Co*., 460 Mich. 446 (1999), the relevant inquiry "is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  *Liss*, 478 Mich. at 212 (quoting *Smith*, 460 Mich. at 465).  The Michigan Supreme Court also construed the meaning of "specifically authorized" under the MCPA.  *Id*.  "Specific" means "having a special application, bearing, or reference; explicit or definite."  *Id*. (citation omitted).  "Authorize" means "to give authority or formal permission for; sanction."  *Id*. at 212-213 (citation omitted).  Thus, the court concluded that the exception "requires a general transaction that is explicitly sanctioned."  *Id*. at 213 (citation and quotation marks omitted).  In *Liss*, the conduct at issue was residential home building.  The court noted that builders are licensed under the Michigan Occupational Code and are regulated by the Contractors' Board, which oversees licensing and handles complaints.  The court further points out that there was a set of administrative rules promulgated to regulate the licensing procedure.  *Id*. at

**Add. 29**

213.  Based on the statutory definition of residential home builder as one who

engages in construction activities for compensation, the court found that a

residential home builder was "specifically authorized" to contract to build homes.

*Id*.

Here, Defendants' analysis is not tethered to *Liss*.  They maintain that,

because energy and solar systems are "subject to regulation in Michigan" and

because the use of renewable energy is authorized by law, then the safe harbor

provision applies.  Yet, they cite two tax statutes, the renewable energy credit

statute, and generally point to the statute governing public utilities in support of

their argument.  This argument does not sufficiently explore the analysis

contemplated by *Liss* or *Smith*.  Defendants do not identify a regulatory board or

officer overseeing PHS's conduct and nothing in Defendants' argument suggests

that there is a Michigan regulatory scheme that "specifically authorizes" the sale

of solar systems as described in the Complaint.  The court concludes that

Defendants have not met their burden of establishing that the exemption applies.

E.    Necessary Parties

Lastly, Defendants argue that the court should dismiss the Complaint under

Rule 12(b)(7) because Plaintiffs have failed to join an indispensable party – PHS –

under Rule 19.  A party is necessary if,

**Add. 30**

> (A) in that person's absence, the court cannot accord
> complete relief among existing parties; or (B) that
> person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in
> the person's absence may; (i) as a practical matter
> impair or impede the person's ability to protect the
> interest; or (ii) leave an existing party subject to a
> substantial risk of incurring double, multiple, or
> otherwise inconsistent obligations because of the
> interest.

Fed. R. Civ. P. 19(a)(1). They argue that PHS is a necessary party because it is

central to all the allegations in the Complaint and the Complaint alleges that

Defendants acted in concert with PHS. Defendants offer the quintessential

description of a joint tortfeasor. And "[i]t has long been the rule that it is not

necessary for all joint tortfeasors to be named as defendants in a single lawsuit."

*Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). As the Supreme Court further

observed, nothing in Rule 19 changes that principle. *Id.* Indeed, the Advisory

Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual

'joint-and-several' liability is merely a permissive party to an action against

another with like liability." *Id.* (quoting 28 U.S.C. App., p. 595). Defendants

protest that moving forward without PHS creates a significant risk of parallel

litigation and inconsistent relief. But they fail to explain how that risk differs in

this case as opposed to any other case where not all joint tort-feasors are joined

**Add. 31**

in the same litigation, which is clearly not sufficient to meet the "indispensable party" standard set forth in Rule 19.

## IV.    CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss in its entirety, except that Plaintiffs' claim under § 1962(a) is **DISMISSED**.

**SO ORDERED**.

Date: September 12, 2023              s/F. Kay Behm
                                      F. Kay Behm
                                      United States District Judge

**Add. 32**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,                                      Case No. 22-12743

      Plaintiffs,                                      F. Kay Behm
v.                                                        United States District Judge

TRIVEST PARTNERS, L.P., *et al.*,

      Defendants.
_____ /

## OPINION AND ORDER GRANTING MOTION FOR
## CERTIFICATE OF APPEALABILITY (ECF No. 34)

### I.    PROCEDURAL HISTORY

Plaintiffs filed this RICO action on November 12, 2022. (ECF No. 1).

Defendants Trivest Partners L.P. and TGIF Power Home Investor, LLC filed a

motion to dismiss the complaint on February 15, 2023. (ECF No. 17). The court

granted in part and denied in part that motion in an Opinion and Order dated

September 12, 2023 (Opinion and Order). (ECF No. 32). This matter is now

before the court on Defendants' motion to certify the issue of whether this court

has personal jurisdiction over Trivest Partners and TGIF Power Home Investor

under 18 U.S.C. § 1965(b) to the Sixth Circuit Court of Appeals pursuant to 28

U.S.C. § 1291(b). (ECF No. 34). This matter is fully briefed. (ECF Nos. 36, 38).

For the reasons set forth below, the motion is **GRANTED**.

1

**Add. 33**

## II.    FACTUAL BACKGROUND

### A.    The Complaint

Plaintiffs filed this action against Defendants Trivest, TGIF, and William

Jayson Waller.  (ECF No. 1).  Plaintiffs allege that the three Defendants violated

RICO through a pattern of racketeering activity involving their conduct with Power

Home Solar, LLC (PHS), also known as Pink Energy (PE).  *Id*.  The Complaint

outlines an allegedly fraudulent scheme designed to lure consumers into

purchasing home solar systems to be designed, installed, and sold by PHS/PE, and

which was carried out by Defendants through multiple uses of the mail and wires.

*Id*.  The scheme included numerous false and misleading advertisements, training

materials, and other communications designed to achieve its goals.

Trivest is a private investment limited partnership organized under the laws

of Florida with its principal place of business in Florida.  (ECF No. 1, ¶ 13).  TGIF is

a limited liability company organized under the laws of Delaware with its principal

place of business in Florida.  *Id*. at ¶ 4.[1]  Plaintiffs allege that Trivest, through TGIF,

purchased an approximately 25% stake in PHS and that Trivest took a "hands-on

role in managing all aspects of the business along with Defendant Waller."  (ECF

---

[1] According to Defendants, TGIF is part of the Trivest Growth Investment Fund. See https://www.trivest.com/wp-content/uploads/2021/11/TGIF_Overview.pdf.  The fund makes non-control, minority investments in fast-growing founder- and family-owned businesses.  *Id*.

**Add. 34**

No. 1, ¶¶ 7, 62).  The Complaint alleges that this "hands-on role" included

providing financial support for and participating in PHS's massive advertising

campaign.  *Id.* at ¶ 7; *see also id.* at ¶ 71 ("Trivest, including but not exclusively

through its subsidiary TGIF, participated in the management of PHS's marketing

sales, and business as a whole.").

Plaintiffs each purchased a home solar system from PHS.  (ECF No. 1, ¶¶ 90-

92).  Plaintiffs contend that PHS represented that their systems would reduce

electricity bills between 70% and 90% and they would, in many instances, receive

government rebate checks to cover part or all of the purchase costs.  *Id.* at 36.

Plaintiffs allege that they relied on PHS's representations related to "expected

production and functionality" of the systems when making their financed

purchases.  *Id.* at ¶¶ 90-92. 93.  Yet, after the systems were installed, it became

apparent that the systems were not functioning as they were supposed to.  *Id.* at

¶ 93.  Plaintiffs' electricity bills were not reduced in any amount near 70-90%, if at

all, and in some instances their electricity bills actually increased.  *Id.* at ¶ 94.  The

Complaint alleges that Defendants knew that customers' electric bills were not

being reduced by anywhere near the promised numbers, because it had access to

real-time monitoring information about their Systems' production.  *Id.* at ¶ 95.

When the Plaintiffs complained to PHS about these issues, they were informed

**Add. 35**

that the problems were remediable and would be resolved, but the systems could

not be fixed because they were improperly designed and installed. *Id.* at ¶¶ 97-

98.

The Complaint alleges that Trivest and TGIF committed "countless acts of

mail and wire fraud" through PHS by causing PHS to send out false, misleading,

and fraudulent advertisements, communications, training materials, and

instructions through the mail and wires (via internet, telephone and fax). *Id.* at

¶ 72. The Complaint goes on to describe how PHS, at the direction of Defendant

Waller and with the involvement of Trivest and TGIF, posted thousands of

misleading advertisements. *Id.* at ¶¶ 73-79.

B.    The Court's Opinion and Order Regarding Personal Jurisdiction

In the Opinion and Order, among other issues, the court analyzed whether

it has personal jurisdiction over Defendants pursuant to § 1965(b). In RICO cases,

"[Section] 1965(b) extends personal jurisdiction through nationwide service of

process over 'other parties residing in any other district,' as long as venue is

proper through [Section 1965](a) with that initial defendant and the 'ends of

justice' require it." *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440

(6th Cir. 2022). Finding jurisdiction over the moving Defendants only "requires at

least one defendant with traditional forum state contacts … such that any number

4

**Add. 36**

of defendants from other districts may be joined under § 1965(b)." *Id*. at 441.

Defendants contended that Plaintiffs were required to establish that no other

district can host the litigation and failed to do so. The court noted that several

district courts within this circuit have analyzed the parameters of "the ends of

justice," noting a split in the circuits: one circuit found that a RICO plaintiff must

show that there is no other district that would have personal jurisdiction over all

the defendants, *see Doe v. Varsity Brands, LLC*, 2023 WL 4935933 (N.D. Ohio Aug.

2, 2023) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc*., 788 F.2d 535, 539

(9th Cir. 1986)) but the Tenth Circuit rejected this notion, concluding that the

"'ends of justice' analysis is not controlled by the fact that all defendants may be

amenable to suit in one forum." *Id*. (quoting *Cory v. Aztec Steel Bldg., Inc*., 468

F.3d 1226, 1232 (10th Cir. 2006)). The *Varsity Brands* case and *Rexam Healthcare

Packaging, Inc. v. Osiris Med., Inc.*, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9,

2010) both adopted the Tenth Circuit's standard, finding its reasoning for

disagreeing with the Ninth Circuit persuasive:

> In so holding, the Tenth Circuit cited persuasive evidence
> that Congress modeled RICO § 1965(b) on antitrust laws
> that "prescribe[d] an 'ends of justice' analysis for
> allowing 'other parties' to be summoned before the
> court, 'whether they reside in the district in which the
> court is held or not.'" *Id*. at 1232 (quoting 15 U.S.C. §§ 5
> (Sherman Act), 10 (Wilson Tariff Act), & 22 (Clayton
> Act)). The Tenth Circuit also noted that it would be

**Add. 37**

> inconsistent with RICO's purpose of "eradicat[ing] organized crime" to force a RICO plaintiff to litigate in an inconvenient judicial district "whenever organized criminals operate within the same locale and cause harm in a distant state." *Id*. at 1232.

*Varsity Brands*, at *15 (quoting *Rexam*, *5). In the Opinion and Order, this court

agreed with the reasoning in *Varsity Brands* and *Rexam* and followed the Tenth

Circuit's standard. Thus, the court concluded that merely because there is a

district in which the court may have personal jurisdiction over all the defendants

does not mean that commencing litigation in this district necessarily violates the

"interests of justice." The court then weighed the factors identified in *Rexam* and

concluded that, on balance, the interests of justice factors weigh in favor of

retaining the litigation in this jurisdiction. Accordingly, the court declined to

dismiss the action for lack of personal jurisdiction.

## III.   ANALYSIS

Generally, 28 U.S.C. § 1291 allows for appeals only from "final decisions of

the district courts of the United States." However, pursuant to 28 U.S.C.

§ 1292(b), a district court may permit a party to file an appeal of a non-final order

if the court is "of the opinion that such order involves a controlling question of

law as to which there is substantial ground for difference of opinion and that an

immediate appeal from the order may materially advance the ultimate

**Add. 38**

termination of the litigation." The moving party bears the burden to show that each requirement of § 1292(b) is satisfied. *In re Flint Water Cases*, 627 F. Supp. 3d 734, 737 (E.D. Mich. 2022) (citing *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)). The district court must then "expressly find in writing that all three § 1292(b) requirements are met. *Id.* (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). It is generally noted that interlocutory appeals are to be permitted "only in exceptional circumstances." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); *Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966) ("Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional circumstances where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.").

Defendants sought to dismiss the complaint for lack of personal jurisdiction in this forum under 18 U.S.C. § 1965(b). In the Opinion and Order, the court rejected Defendants' argument that Plaintiffs cannot satisfy the "ends of justice" requirement under 18 U.S.C. § 1965(b) because Plaintiffs have not adequately pleaded a RICO claim and have failed to show that no other district can host the litigation. (ECF No. 32, PageID.301-05). The court also acknowledged the split in

**Add. 39**

the circuits on this issue and chose to follow the standard adopted by the Tenth

Circuit Court of Appeals. *Id*. at PageID.304.

In support of its motion, Defendants contend that the present dispute

satisfies the standard for certification of interlocutory appeal found in § 1292(b)

because (1) a controlling legal question is involved; (2) there is substantial ground

for difference of opinion regarding it; and (3) an immediate appeal would

materially advance the litigation's ultimate termination. *Rafoth v. Nat'l Union Fire*

*Ins. Co*., 954 F.2d 1169, 1172 (6th Cir. 1992). The court will address the three

requirements below.

A.    Existence of a Controlling Issue of Law

In determining whether to certify an issue for interlocutory appeal, it must

first be found that the relevant issue is "controlling." 28 U.S.C. § 1292(b). The

Sixth Circuit has generally set a low bar for determining that a question of law is

"controlling" in the context of a motion for certification under § 1292(b), and it

must only be shown that the question could "materially affect the outcome of the

case." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875-76 (E.D. Mich.

2012); *see also In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th

Cir. 1992) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990),

*vacated on other grounds by* 937 F.2d 44 (1991) ("the resolution of an issue need

**Add. 40**

not necessarily terminate an action" or "have precedential value for a number of pending cases" to be "controlling"); *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litigation)*; 673 F.2d 1020, 1026 (9th Cir. 1981) ("all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.")).

Defendants' interlocutory appeal centers on the court's construction of the statutory phrase "interests of justice" in 18 U.S.C. § 1965(b). An issue of "statutory interpretation is a question of law." *Johnson v. United States*, 64 F.4th 715, 721 (6th Cir. 2023). Defendants argue that this question of law is controlling as to this litigation generally "because [its] resolution could materially affect the outcome of the case." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). And, Defendants assert, that question of law was controlling as to the Opinion and Order specifically because it was a key analytical point in resolving Defendants' motion to dismiss. In response, Plaintiffs argue that Defendants have not satisfied this prong of the test because their analysis of the issue was cursory, at best. More specifically, Plaintiffs contend that Defendants fail to explain how an interlocutory appeal could materially affect the outcome of the litigation.

As Defendants point out the bar on this question is low and "all that must be shown in order for a question to be controlling is that resolution of the issue

**Add. 41**

on appeal could materially affect the outcome of the litigation in the district

court." *In re Baker & Getty*, 954 F.2d at 1172; *see also* Wright, Federal Practice &

Procedure § 3930 (3d ed.) ("A steadily growing number of decisions . . . have

accepted the better view that a question is controlling, even though its

disposition might not lead to reversal on appeal, if interlocutory reversal might

save time for the district court, and time and expense for the litigants.").  The

question of whether the Ninth Circuit standard should be followed instead of the

Tenth Circuit standard as this court concluded would materially affect whether

this proceeding could continue in this court against these Defendants.  If the Sixth

Circuit were to disagree with this court's conclusion, it would likely result in a

dismissal of this action against Defendants Trivest and TGIF Home Power.

Accordingly, the court finds that Defendants have sufficiently identified a

controlling question of law for purposes of § 1292(b).

     B.    <u>Substantial Ground for Difference of Opinion</u>

To determine whether a "substantial ground for a difference of opinion"

exists as to the issues raised in an interlocutory appeal, a court must look to

whether: "(1) the question is difficult, novel and either a question on which there

is little precedent or one whose correct resolution is not substantially guided by

previous decisions; (2) the question is difficult and of first impression; (3) a

10

**Add. 42**

difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question."  *Newsome*, 873 F. Supp. 2d at 876-77 (citations omitted).

The court finds that there is a substantial ground for difference of opinion given both the circuit split identified in the Opinion and Order and the district court split within the Sixth Circuit identified by Defendants.  *See Anthony v. Over*, 2023 WL 6307960, *3 (E.D. Tenn. Sept. 27, 2023) (following the Tenth Circuit's approach); *Enginetec Corp. v. Boutin*, 2008 WL 11380215, *4 (N.D. Ohio Dec. 5, 2008) (following the Ninth and Second Circuits' approach); *High Adventure Ministries, Inc. v. Tayloe*, 309 F. Supp. 3d 461, 472-73 (W.D. Ky. 2018) (explaining that "courts have declined to exercise personal jurisdiction under the nationwide service of process available for RICO claims if there is a district where venue is proper as to every RICO defendant, without resort to § 1965.").  Accordingly, the court concludes that the second prong of the § 1292(b) test is satisfied because of the circuit split, the varying opinions in the district courts within the Sixth Circuit, and because the question has not yet been answered by the Sixth Circuit Court of Appeals.  *See In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (finding a substantial ground for difference of opinion when "a difference of opinion exists within the controlling circuit; or [ ] the circuits are split on the question" and it is a question that the circuit in question has not answered).

**Add. 43**

C.    <u>Appeal Would Materially Advance the Ultimate Termination of the Litigation</u>

Finally, the court must address whether an interlocutory appeal at this stage in the proceedings would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An appeal "materially advances the litigation" when it "save[s] judicial resources and litigant expense." *Newsome*, 873 F. Supp. 2d at 878 (citing *West Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 872, 878 (E.D. Mich. 2012)). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Id.* (citing *City of Dearborn v. Comcast of Michigan III, Inc.*, No. 08-10156, 2008 WL 5084203, at *1 (E.D. Mich. Nov. 24, 2008) (quoting *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997))).

As addressed above, a finding that the court lacks personal jurisdiction would materially affect the outcome of the case, resulting in dismissal of the claims against these Defendants. At this stage, there has been minimal discovery completed, as the parties do not yet have a scheduling order setting the required dates and deadlines. Allowing an interlocutory appeal at this time would "promote judicial economy by settling [this] highly contested question[] before – potentially needlessly – occupying the Court's and parties' time and attention."

**Add. 44**

*Newsome*, 873 F. Supp. 2d at 876.  As such, the third prong of the test is also satisfied.

Plaintiffs' reliance on cases finding this prong unsatisfied where the matter would not lead to termination, but instead, would result in a transfer of venue or remand to state court are inapposite.  *See e.g.*, *C.T. v. Red Roof Inns, Inc.*, 2022 WL 18003292 (S.D. Ohio Dec. 30, 2022); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020).  Here, Defendants have not sought a transfer of venue.  Instead, they seek dismissal of all claims against them based on a lack of personal jurisdiction.  Such a ruling in their favor would materially advance the termination of this litigation against them.  *See e.g.*, *Tieszen v. eBay, Inc.*, 2022 WL 79820, at *2 (D.S.D. Jan. 6, 2022) (Court found that certification would materially advance the ultimate termination of the litigation because, if the Court of Appeals disagrees with the district court on the issue of personal jurisdiction, the moving defendant would be dismissed, and the case greatly simplified.); *Gilmore v. Jones*, 2019 WL 4417490, at *7 (W.D. Va. Sep. 16, 2019) (certifying decision on defendants' Rule 12(b)(2) motion to dismiss to implicate a controlling question of law because whether the Fourth Circuit affirmed or denied the district court's holding on personal jurisdiction could result in the dismissal of the action except

**Add. 45**

for one defendant).  Accordingly, the court finds that Defendants have satisfied

the third prong.

**IV.     CONCLUSION**

For the reasons set forth above, the court **GRANTS** the motion for

certificate of appealability.

**SO ORDERED**.

Date: February 16, 2024                              s/F. Kay Behm
                                                     F. Kay Behm
                                                     United States District Judge

**Add. 46**